1
2
3
4
5
6
7
8                           UNITED STATES DISTRICT COURT

9                          SOUTHERN DISTRICT OF CALIFORNIA

10   ANTHONY WAYNE JOHNSON, JR.,                Civil No.    09cv1312-LAB (POR)

11                                 Plaintiff,
                                                **ORDER GRANTING IN PART
12                                              PLAINTIFF'S MOTION FOR
            v.                                  SANCTIONS AND GRANTING IN
13                                              PART PLAINTIFF'S MOTION FOR
                                                REIMBURSEMENT OF LEGAL FEES**
14   M. GAINS *et al.*,
                                                **[ECF No. 184]**
15                                 Defendants.
                                                **[ECF No. 212]**
16

17

18                                **I. INTRODUCTION**

19          On February 6, 2012, Plaintiff Anthony Wayne Johnson, Jr., a state prisoner proceeding *pro

20   se* on a civil rights complaint pursuant to 42 U.S.C. § 1983, filed a Motion for Sanctions.  (ECF No.

21   184.)  Plaintiff requests the Court impose sanctions because Defendants failed to produce documents

22   in response to the Court's previous discovery orders.  Defendants filed a Response in Opposition to

23   Plaintiff's Motion for Sanctions on February 10, 2012.  (ECF No. 190.)

24          The Court held a Discovery Conference on February 14, 2012.  Based on the discussion with

25   the parties, this Court had grave concerns that Calipatria State Prison personnel have not cooperated

26   with Counsel and failed to comply with the Court's discovery orders in this case.  Accordingly, the

27   Court ordered the person or persons most knowledgeable about the search protocol for documents at

28   Calipatria State Prison to appear before the Court to provide testimony under oath concerning the

search protocol, and procedures which were conducted in response to Plaintiff's requests and the Court's orders, and with what results.  (ECF No. 198.)

On February 22, 2012, the Court held an Evidentiary Hearing.  Appearing were: Plaintiff Anthony Wayne Johnson, Jr.; Terrence Sheehy, Esq. and Michelle DesJardins, Esq., counsel for Defendants; Gabriela Nunez, Litigation Coordinator for Calipatria State Prison; and Irma Moreno, Associate Litigation Coordinator for Calipatria State Prison.

Following the Evidentiary Hearing and at the Court's direction, Plaintiff filed a Motion for Reimbursement of Legal Fees, detailing the legal expenses incurred as a result of Defendants' failure to respond to Plaintiff's discovery requests.  (ECF No. 212.)  Plaintiff requests $101.70 in reimbursement of his legal expenses, as well as $500 for the infliction of emotional distress.

Based on the testimony of Ms. Nunez and for the reasons set forth below, IT IS HEREBY ORDERED that Plaintiff's Motion for Sanctions and Plaintiff's Motion for Reimbursement be GRANTED in part and DENIED in part.

## II. DISCUSSION

Federal courts may impose monetary sanctions on parties failing to comply with court orders under both the Federal Rules of Civil Procedure and Local Rules of Court.  Rule 37 of the Federal Rules of Civil Procedure provides that where a party fails to comply with a court order, "the court **must** order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust."  FED. R. CIV. P. 37(b)(2)(c) (emphasis added).  Furthermore, "[f]ailure of counsel or of any party to comply . . . with any order of the court may be grounds for imposition by the court of any and all sanctions authorized by statute or rule or within the inherent power of the court, including, without limitation, . . . imposition of monetary sanctions or attorneys' fees and costs."   S.D. Cal. Civ. R. 83.1(a).

The lack of bad faith does not immunize a party or its attorney from sanctions; however, a finding of good or bad faith may be a consideration in determining whether imposition of sanctions would be unjust.  *Hyde & Drath v. Baker*, 24 F.3d 1162, 1171 (9th Cir. 1994); *see also Fjelstad v. American Honda Motor Co., Inc.*, 762 F.2d 1334, 1343 (9th Cir. 1985) ("We consistently have held

that sanctions may be imposed even for negligent failures to provide discovery.").  Moreover, "[b]elated compliance with discovery orders does not preclude the imposition of sanctions" as the "[l]ast-minute tender of documents does not cure the prejudice to opponents."  *North American Watch Corp. v. Princess Ermine Jewels*, 786 F.2d 1447, 1451 (9th Cir. 1986), citing *G-K Properties v. Redevelopment Agency of City of San Jose*, 577 F.2d 645, 647-48 (9th Cir. 1978).

In this case, Plaintiff made Requests for Production of Documents as early as July 2011. However, as of February 2012, and only after repeated motions by Plaintiff, orders by the Court, and defense counsel's inquiring of various state officers and traveling to Calipatria State Prison to conduct his own review of records, documents are still dribbling into the Court for review.  The discovery cutoff date is past and Plaintiff is now precluded from follow-up discovery in response to any documents now produced. This obviously prejudices Plaintiff from case preparation.  Based on the testimony provided at the February 22, 2012 Evidentiary Hearing, it is apparent that Calipatria maintains an abysmal record keeping system.  Calipatria officials do not adequately work with the very attorneys charged with representing Calipatria personnel and the prison itself, nor has Calipatria been forthcoming with documents in response to Mr. Johnson's requests or Court orders. Plaintiff, Mr. Johnson, is the extraordinary prisoner who has diligently pursued his right to discovery through numerous motions to the Court, which resulted in the Court holding an evidentiary hearing in this matter.  It is unclear whether Calipatria's failures are an intentional withholding of documents and cooperation or the result of an extremely antiquated, ineffectual and inefficient system for creating, storing and maintaining the preservation of records, and accessing records and documents. The record keeping system resembles the final scene of *The Raiders of the Lost Ark*.  Simple cooperation and candor between Calipatria officials with the Attorney General Office's lawyers representing its personnel would have avoided untold hours of labor by Plaintiff, the Attorney General's Office and the Court in this case.

Based on a thorough review of the testimony of Ms. Gabriela Nunez, Litigation Coordinator for Calipatria State Prison, the Court finds as follows:

1.      At Calipatria State Prison, records are maintained in a number of different departments, any one of which may or may not have the records requested during the course of

1   litigation.  Depending on the precise wording of a request for production of documents, the

2   Litigation Coordinator must make a decision as to which department to direct the inquiry.

3        2.     The Litigation Coordinator's Office consists of one person serving as the Litigation

4   Coordinator and one clerical staff person.  Based on doctor's orders, the current Associate Litigation

5   Coordinator (clerical staff person), Irma Moreno, was not able to testify in Court, and based on the

6   same physical or mental restraints, it appears that she is not always available to address litigation

7   issues.  Although not specifically stated, the Court finds it apparent from the testimony that often the

8   decision of where the discovery inquiry is directed is made by this clerical assistant.  That one

9   person has **no** legal training, which should trigger an understanding of a need to communicate

10  closely with defense counsel.  This is not done and the workload dictates that it is seldom done.

11       3.     The Litigation Coordinator's Office does not have access to updated contact

12  information for Calipatria personnel, including the addresses and telephone numbers of prison

13  officials named as defendants in pending actions.  (ECF No. 201 (hereinafter "Transcript") at p. 9.)

14  This being the case, the Litigation Coordinator can not contact the named defendants directly, which

15  in turn delays all responses to discovery for weeks or months.

16       4.     Although neither Nunez or Moreno have any legal or paralegal training, they provide

17  assistance to the named defendants in responding to discovery requests.

18       5.     At the time of the hearing, Calipatria housed approximately 4,200 inmates and

19  employed approximately 1000 employees.  There are fifteen different departments, each of which

20  maintains different records and different record keeping procedures.

21       6.     Adverse actions, letters of instruction and other performance review documents are

22  often the subject of discovery requests.  However, the parties, the Court, the Attorney General's

23  office and counsel representing named defendants are prohibited from reviewing such documents

24  because they are removed from personnel files and destroyed after a predetermined period of time

25  upon the request of the employee.  When adverse action documents expire, they are purged entirely

26  and copies are not kept in any other location.  Even the employee's request to purge documents is

27  destroyed.  Thus, it is doubtful how useful the discovery process can be if a discovery request seeks

28  documents that have expired due to a predetermined retention schedule and there is **no** "paper trail"

1  indicating that any such document ever existed. (Transcript at pp. 13-14.)

2       7.     The Litigation Coordinator does not search for documents in response to a discovery

3  request; rather, the Litigation Coordinator only passes the discovery request on to personnel in the

4  various departments at Calipatria.  Therefore, to respond to discovery requests, the Litigation

5  Coordinator must rely entirely on other personnel and must assume that others are conducting

6  searches with the due diligence required.  (Transcript at pp. 14-15.)

7       8.     Even Calipatria employee performance reviews are purged according to a

8  predetermined retention schedule.  One must assume that such performance reviews are designed to

9  gage the competency of employees; however, performance evaluations are **not** completed on a set

10  schedule.  (Transcript at pp. 29-30.)  Ms. Nunez herself has not had a performance evaluation in

11  over ten years.  (Transcript at p. 15.)  Generally, performance reviews are completed in the first few

12  years of employment, or at the specific request of an employee.  (Transcript at p. 16.)  Otherwise,

13  employees usually request an evaluation when they intend to seek a promotion.  Therefore, it

14  appears performance reviews have little value even within the institution – they are not an accurate

15  reflection of performance and, since sought by the employee for promotion purposes, they will

16  seldom document a negative review.  (Transcript at p. 17.)  The Court also sees little value to these

17  performance reviews as it is doubtful they will accurately reflect performance on an on-going basis.

18       9.     It appears that if there is an investigation into alleged employee misconduct, the

19  records may be in one or more departments, and the outcome of that investigation may determine in

20  what department or location within a department documents are kept or destroyed.  Records are kept

21  by a log number, not by name, and therefore it is almost impossible for Calipatria personnel to locate

22  records without a log number or further information.  (Transcript at pp. 18, 21.)  It was represented

23  to the Court that there are over 3,500 incident reports listed in a huge stack of logs that can only be

24  accessed by reference to a log number.  (Transcript at p. 64.)  This makes discovery by the plaintiff

25  next to, if not, infeasible.

26       10.    There is no central clearing house or data base where available records are kept.

27  (Transcript at pp. 19-20.)  According to Calipatria's records retention schedule, all appeals and staff

28  complaints are destroyed after only three years and grievance records after five years.  Because most

1   prisoner litigation cases filed in federal court must withstand the test of motions to dismiss, these

2   cases seldom reach the discovery stage before the records are destroyed.  Furthermore, there appears

3   to be no mechanism for retention of potentially relevant records and documents upon the filing of a

4   complaint by a prisoner.

5          11.     Even though the Plaintiff in the instant matter, Mr. Johnson, specifically requested

6   citizen complaints and the Court specifically ordered that all citizen complaints filed against

7   Defendants be produced, Ms. Nunez, the Litigation Coordinator responsible for obtaining such

8   documents and gathering evidence, stated that she has never worked on a request for a citizen

9   complaint.  (Transcript at pp. 21-24.)

10          12.     In this instance, the Litigation Coordinator relied on a Defendant, Lieutenant Carpio,

11   to review the incident reports and determine what documents should be provided to the Attorney

12   General's Office.  (Transcript at pp. 26-28.)  Ms. Nunez did not review any incident reports; rather,

13   she relied on Defendant Carpio to make the determination himself.  (Transcript at pp. 35-36.)

14   Although she has **no** legal training, in other instances, Ms. Nunez has made professional

15   determinations regarding the relevance of documents and whether documents or records should be

16   provided to the Attorney General's Office.  (Transcript at p. 26.)  Thus the Attorney General's

17   Office is prevented from completing a full review of documents and cannot determine what should

18   be produced, not produced or objected to based upon relevancy, privilege or privacy issues.  The

19   Attorney General's Office or other counsel representing defendants are thereby prevented from

20   complying with federal law and ethical responsibilities.

21          13.     Record keeping at Calipatria is poor at best.  Calipatria personnel and staff do **not**

22   follow the Department Operations Manual's (DOM) requirements and do not even follow internal

23   institutional regulations.  (Transcript at pp. 30-31.)  Mr. Johnson, the Plaintiff in this case, was much

24   more familiar with the DOM and its requirements than any official at the Calipatria facility.

25          14.     Calipatria, like all other state-run institutions, is short of staff, resources, and money.

26   Due to that lack of funding or desire, Calipatria, like all other state-run institutions, has not

27   computerized its current records or archived past records.  Consequently, Calipatria has little in the

28   way of an organized or systematic way to locate or search for documents.  (Transcript at p. 32.)

1   What records have been computerized are kept according to log number, not in a way that would

2   allow the Litigation Coordinator or other personnel to search for or access incident reports or other

3   records by a defendant's name.  (Transcript at pp. 44-45, 59-60, 64.)

4        15.    Even where the Court has ordered the production of records, it appears that the

5   Calipatria Personnel and Legal Affairs Departments withhold documents they consider private and

6   confidential, rather than forwarding such documents to the Attorney General's Office so that their

7   attorney can prepare the appropriate privilege log.  (Transcript at pp. 32-35.)

8        16.    In Plaintiff's Requests for Production of Documents Numbers 26, 27 and 28,

9   Plaintiff listed specific departments and offices from which he sought various records, including the

10  Investigative Service Unit, Internal Affairs, the Northern Regional Headquarters Sacramento, and

11  the California Department of Corrections and Rehabilitation Law Enforcement Liaison Unit.

12  Rather than forward these  requests to the specific departments identified by Plaintiff, Ms. Nunez

13  sent Plaintiff's requests to Lieutenant Nelson, director of the Investigations Unit.  Though Ms.

14  Nunez trusts Lieutenant Nelson because he is "very knowledgeable" and has been at Calipatria since

15  the institution opened, she does not know if Mr. Nelson forwarded Plaintiff's requests to the

16  appropriate departments and state agencies.  (Transcript at pp. 57-59.)  Unlike Mr. Johnson,

17  however, most plaintiffs in these matters are *pro se* and not learned in legal or prison system jargon.

18       For the foregoing reasons, the Court finds that a combination of Calipatria's abysmal record

19  keeping practices and prison personnel's failure to comply with valid Court orders has prejudiced

20  Plaintiff's ability to conduct full and adequate discovery in this case.  These practices have further

21  interfered with defense counsel's ability to adequately represent the named defendants in this action.

22  Accordingly, the Court hereby GRANTS Plaintiff's request for the reimbursement of $101.70 in

23  costs. Emotional distress, however, is not an element that may be considered when determining

24  discovery sanctions.  *See* FED. R. CIV. P. 37(b)(2)(c).  Therefore, to the extent Plaintiff has requested

25  additional sanctions for emotional distress, his request is DENIED.

26       This case has settled as to all defendants and all issues since the evidentiary hearing and

27  before the entry of this order.  Accordingly, the Court declines to address the outstanding discovery

28  disputes.

Based on the foregoing reasons, IT IS HEREBY ORDERED Defendants through the California Department of Corrections and Rehabilitation are liable for $101.70 in costs to be paid to Plaintiff's prison account on or before **April 20, 2012**.  The Court specifically finds **NO** discovery sanctions attributable to defense counsel.

DATED:  March 23, 2012

_____
LOUISA S PORTER
United States Magistrate Judge

cc        The Honorable Larry A. Burns
          All parties